# IN THE COURT OF APPEALS OF IOWA

No. 14-1673
Filed February 10, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**EDWARD DANIEL TOWNEY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mark J. Smith,

Judge.


        The defendant challenges his convictions for sexual abuse in the third

degree. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Bradley Bender, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik and Mary Triick,

Assistant Attorneys General, for appellee.


        Heard by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Edward Towney challenges his convictions for two counts of sexual abuse in the third degree, in violation of Iowa Code section 709.4(2)(c)(1) (2013). We affirm the defendant's convictions.

I.

The complaining witness, C.B., is the oldest of four children. Between April 2012 and August 2013, when C.B. was 14 or 15 years old, C.B. lived with her father but frequently stayed with her mother, her siblings, and her mother's boyfriend, Towney, in her mother's house. C.B. testified that, while staying at her mother's house, she sometimes slept in an upstairs bedroom and sometimes slept in a bedroom on the main floor with Towney. C.B.'s mother and siblings slept in the living room on the main floor. When C.B. was in the bedroom with Towney, he blocked the door so no one could enter. C.B.'s mother objected, yelled, and fought with Towney when Towney ordered C.B. to come to his bedroom for the night. C.B. testified Towney began having sexual contact with her during this time period. On the first occasion, Towney plied C.B. with alcohol. He touched her over her clothes, then under her clothes, then took off her clothes, and then had vaginal intercourse with her. C.B. stated Towney physically forced her to have vaginal intercourse, it was painful, and it caused bleeding. After the first incident, there were numerous other incidents of sexual contact between Towney and C.B., including vaginal, anal, and attempted oral sex. The sexual contact mostly occurred in the main floor bedroom at the mother's house. On several occasions, the sexual contact occurred in the field behind the mother's house. Towney complimented C.B. and told C.B. they would

be together when she turned eighteen. He also threatened to slit the throat of anyone she told about the sexual abuse.

II.

Towney first contends the district court erred in allowing certain testimony of Dr. Barbara Harre, medical director of the Child Protection Response Center. The State sought to have Dr. Harre testify in her capacities as a treating physician and as an expert witness. Towney filed two motions in limine regarding Dr. Harre's testimony. In the first motion, Towney sought to exclude Dr. Harre's testimony, generally, and any testimony regarding "the dynamics of child abuse and/or issues relating to credibility of the witness(es)," particularly. In the second motion, Towney sought to exclude as hearsay statements made by C.B. to Dr. Harre. At trial, following a hearing outside the presence of the jury, the district court denied Towney's motions in limine. The district court concluded (1) Dr. Harre's testimony as an expert would assist the jury and was thus admissible pursuant to Rule 5.702 and (2) C.B.'s statements to Dr. Harre were made for the purpose of treatment and thus admissible pursuant to Rule 5.803(4). On appeal, Towney contends Dr. Harre's testimony constituted impermissible vouching for the credibility of C.B. and impermissible opinion regarding Towney's guilt or innocence.

The district court's rulings on the admissibility of evidence are reviewed for an abuse of discretion. *See State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013). The admissibility of expert testimony in a criminal case "falls squarely within the trial court's sound discretion." *State v. Hulbert*, 481 N.W.2d 329, 332 (Iowa 1992). The district court abuses its discretion when it acts "on grounds or for

reasons clearly untenable or to an extent clearly unreasonable." *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.*

Iowa Rule of Evidence 5.702 provides for expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." However, an expert is not permitted to express an opinion on the credibility of a witness or on the guilt or innocence of a defendant. *See State v. Myers*, 382 N.W.2d 91, 94 (Iowa 1986). An expert may not vouch for the credibility of a witness either directly or indirectly. *See State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014); *State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014); *State v. Jaquez*, 856 N.W.2d 663, 665 (Iowa 2014). In child-sex-abuse cases, "there is a very thin line between testimony that assists the jury in reaching its verdict and testimony that conveys to the jury that the child's out-of-court statements and testimony are credible." *Dudley*, 865 N.W.2d at 677. An expert witness can testify regarding the "typical symptoms exhibited by a person after being traumatized." *Id.* at 676. An expert witness may also explain why "children victims may delay reporting their sexual abuse." *Id.* The expert must "avoid[] commenting directly on the child at issue" and can testify "only . . . generally about victims of sexual abuse." *Id.*

Dr. Harre testified C.B. was referred by C.B.'s therapist. Dr. Harre conducted a physical exam of C.B. but found no evidence of sexual trauma. The only evidence of harm observed were healing wounds from cutting. Dr. Harre testified to what C.B. had told her concerning Towney's sexual contact with her.

She also testified regarding the healing of sexual trauma that can occur in a year's time so as not to leave any physical evidence of sex abuse. Dr. Harre also testified about her experience with reporting of sex abuse and the process of grooming sex abuse victims.

We conclude Towney failed to preserve error on this claim. "Generally, the district court's ruling on a motion in limine is not subject to appellate review because the error, if any, occurs when the evidence is offered at trial and is either admitted or refused." *See Wailes v. Hy–Vee, Inc.*, 861 N.W.2d 262, 264 (Iowa Ct. App. 2014). "Thus, error claimed in a court's ruling on a motion in limine is waived unless the error is preserved at trial when the evidence is offered." *Id.* Towney filed two motions in limine to exclude Dr. Harre's testimony. The district court denied the motions, stating it would allow the testimony "in this respect" and "in the fashion indicated," referring to Dr. Harre's testimony regarding C.B.'s reports to Dr. Harre and referring to Dr. Harre's expert opinion regarding sex abuse victims generally. Towney does not dispute that Dr. Harre's testimony, as limited, was admissible under Rules 5.702 and 5.803(4). Nor does Towney contend the district court erred in denying the motions in limine. Instead, Towney's true claim appears to be, in some instances, Dr. Harre's testimony crossed the "thin line" between allowable expert testimony and impermissible vouching and impermissible opinion regarding guilt or innocence. However, Towney's trial counsel failed to interpose any objection to the challenged testimony. *Dudley* instructs that each challenged statement must be assessed separately. *See Dudley*, 865 N.W.2d at 678. Perforce, error must be preserved with respect to each challenged statement. *See id.* It was not in this case.

Even if we were to address the claim on the merits, the claim fails for other reasons. First, *Dudley* requires each challenged statement to be assessed individually. The State asserts Towney does not set forth with specificity which of Dr. Harre's statements are objectionable; instead, "his brief outlin[es] basically the entirety of Dr. Harre's testimony on direct examination." During oral argument, Towney's counsel explained while no single statement constituted improper vouching or improper opinion regarding guilt or innocence, the testimony as a whole effectively did so. Under *Dudley*, we do not think Towney's testimony-as-a-whole approach presents a viable claim. Second, even assuming Towney could challenge all or substantially all of Dr. Harre's testimony in this fashion, we conclude the entirety of the challenged testimony does not effectively cross the fine line set forth in *Dudley*. Third, we conclude Dr. Harre's statements, when considered individually, do not cross the fine line set forth in *Dudley*.

One statement deserves more discussion. First, the doctor testified regarding C.B.'s cutting behaviors, stating it was a "very classic pattern. They're repetitive marks, superficial marks. And depending on where the child does the cutting, it's a classic pattern." Towney contends Dr. Harre impermissibly linked cutting as a response to sexual abuse to the victim in this case. We disagree. Towney takes the statement out of context.

> Q. Did you find any healed areas on her skin? A. . . . I did not find any injuries related to the physical experiences of being punched, being hit with a belt. I didn't find any residual injuries from that. I did not identify any injuries to the genital or anal structures. She did have multiple areas of cutting that were healing.
> Q. And how did you identify that to be areas of cutting? A. Oh, it's a very classic pattern. They're repetitive marks, superficial

marks. And depending on where the child does the cutting, it's a very classic pattern.

The doctor's testimony regarding the "classic pattern" was not a statement linking this victim to cutting as a response to sex abuse. Instead, the reference to a "classic pattern" distinguished the intentional cuts from accidental injury.

For the foregoing reasons, we conclude the district court did not abuse its discretion in allowing the challenged testimony.

III.

Towney contends his trial attorney was constitutionally ineffective in failing to object to several instances of prosecutorial misconduct. We apply the following standard to assess a prosecutorial misconduct claim raised within an ineffective-assistance-of-counsel claim:

> In analyzing the defendant's ineffective-assistance-of-counsel claim, our first step is to assess whether the record demonstrates, as a matter of law, the existence or absence of a meritorious due process violation. Thus, we must consider whether the prosecutor was guilty of misconduct in the particulars identified by [defendant] and whether the record shows [defendant] was prejudiced, i.e., denied a fair trial.
>
> If the record is insufficient to make this determination, we must preserve the defendant's ineffective-assistance claim for a fuller development of the pertinent facts. If, however, the record shows that either element is lacking as a matter of law, we will affirm [defendant's] conviction without preserving his due process claim for a later postconviction relief action.

*State v. Graves*, 668 N.W.2d 860, 869–70 (Iowa 2003).

A party is entitled to a new trial based on prosecutorial misconduct only if the party has shown he was denied a fair trial. *See State v. Bowers*, 656 N.W.2d 349, 355 (Iowa 2002). Relevant factors include: "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the

central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Graves*, 668 N.W.2d at 869 (internal citations omitted). "The most important factor under the test for prejudice is the strength of the State's case." *State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006). If the defendant establishes a meritorious due process claim, we must then consider that claim within the context of an ineffective-assistance-of-counsel claim by considering whether trial counsel's decision to forego objection or request new trial was a breach of an essential duty and whether *Strickland* prejudice resulted.

Towney argues the prosecutor's use of the words "rape," "sexual assault," "assault," and similar terms were designed to appeal to the jury's sympathies, arouse its sense or horror, and provoke its instinct to punish. The prosecutor used the terms "rape" and "sex assault" once during opening statement. The prosecutor used the term "sexual assault(s)" in seven questions during examination of C.B. and the term "assault" in one question to C.B. During closing argument, the prosecutor used the term "forcibly rape" once. In rebuttal, the prosecutor used "sex assault" once and "forcibly raped" twice.

We conclude the prosecutor's use of these terms did not constitute misconduct. While Towney is correct that "rape" and "sexual assault" are not statutory terms related to sexual abuse in the third degree, the terms are commonly used and understood to describe the conduct at issue. *See State v. Roach*, 825 N.W.2d 258, 270 (S.D. 2012) (holding the court did not abuse its discretion in denying the defendant's objection to use of the word "rape" and

collecting cases). Relatedly, the words "rape" or "sexual assault" are no more inflammatory—and probably less inflammatory—than words that could have been used to describe the actual conduct at issue. *See, e.g.*, *State v. Condit*, No. 05-1547, 2007 WL 1342511, at *4 (Iowa Ct. App. May 9, 2007) (holding prosecutor's use of the word "rape" during sex abuse trial did not constitute misconduct). For example, the prosecutor's question, "Did he ever—after the sexual assault, did he say anything to you," does not strike us any more inflammatory than requiring the prosecutor to state, "After the defendant forcibly inserted his penis into your vagina, did he say anything to you." Further, it does not appear the terminology used was a "persistent effort[] to inject prejudicial matter before the jury." *See State v. Neiderbach*, 837 N.W.2d 180, 209 (Iowa 2013); *see also State v. Krogmann*, 804 N.W.2d 518, 526 (Iowa 2011). Ultimately, in this case, it is the nature of the conduct at issue and not the prosecutor's language that was inflammatory.

Towney also contends several rhetorical questions in closing were "an implied attempt to vouch for the credibility of [several] witnesses." He argues the statements were not arguments from the evidence but were the prosecutor's opinions on the truthfulness of the testimony. It is improper for the prosecutor to give his personal opinion regarding the evidence. *See State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983) ("Of course, counsel has no right to create evidence by his argument nor interject his personal beliefs. It is for the jury to determine the logic and weight of the conclusions drawn."). "The key point is that counsel is precluded from using argument to vouch personally as to a defendant's guilt or a witness's credibility. This is true whether the personal

belief is purportedly based on knowledge of facts not possessed by the jury, counsel's experience in similar cases, or any ground other than the weight of the evidence in the trial." *Id.*

We conclude the prosecutor's statements did not constitute impermissible vouching. A prosecutor is entitled to "some latitude" during closing arguments in analyzing the evidence admitted at trial. *See Graves*, 668 N.W.2d at 874. A prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence but may not suggest that the jury decide the case on any ground other than the weight of the evidence introduced at trial. *See id.* "The governing principle does not preclude all personalized remarks; it merely precludes those that do not appear to be based on the evidence." *Williams*, 334 N.W.2d at 745. "The credibility of witnesses is a proper subject for discussion during closing argument." *State v. Martens*, 521 N.W.2d 768, 772 (Iowa Ct. App. 1994). Here, the prosecutor's statements regarding credibility constituted argument drawn from the evidence.

Even if the prosecutor had engaged in any misconduct, Towney has not established he did not receive a fair trial. *See Graves*, 668 N.W.2d at 869 ("Thus, it is the prejudice resulting from misconduct, not the misconduct itself, that entitles a defendant to a new trial."). There was strong evidence of Towney's guilt. C.B. testified credibly regarding the sexual abuse. She reported the acts to Dr. Harre. C.B.'s siblings testified Towney blocked the door to the bedroom when C.B. slept in the bedroom with him. A temporary boarder in the home testified to one incident in which he observed Towney in a spooning position with C.B. In addition, the challenged statements were isolated and not

repeated as part of an overall theme. Finally, the jury was instructed it should base its verdict only on the evidence and that the statements, arguments, questions, and comments by the lawyers were not evidence. *See State v. Musser*, 721 N.W.2d 734, 756–57 (Iowa 2006) (finding defendant was not prejudiced where the jury was instructed "to decide the defendant's guilt or innocence from the evidence and the law in these instructions, and that evidence did not include statements, arguments, and comments by the lawyers"); *State v. Reeves*, No. 13–0908, 2014 WL 2884864, at *4–5 (Iowa Ct. App. June 25, 2014) (holding the defendant failed to establish prejudice where the evidence was strong and the jury was properly instructed to consider only the evidence). "[W]e are faced with the firmly established rule that misconduct of the prosecutor does not require a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial." *State v. Mercer*, 154 N.W.2d 140, 142 (Iowa 1967). The prosecutor's conduct did not deprive Towney of a fair trial.

IV.

Towney also raises several challenges to the district court's disposition of his motion for new trial. In his motion for new trial Towney argued the verdict was contrary to the weight of the evidence and the court should have disallowed Dr. Harre's testimony. The State argued, in its resistance, the weight of the evidence supported the verdict and the court correctly denied Towney's motions in limine. During the sentencing hearing, the district court addressed the motion for new trial. Towney's counsel did not make any additional argument, noting "Any and all argument offered by the defense is presented in the motion." The State also did not offer any additional argument. The court ruled, "For the

reasons stated in the State's resistance, the motion for new trial and motion in arrest of judgment is denied."

On appeal, Towney contends the district court did not "properly discharge its duty" in denying the motion by only referring to the State's resistance instead of making an independent evaluation of the evidence. We know of no authority precluding the district court from denying a motion for the reasons set forth in the papers. Indeed, the practice appears to happen with some frequency. *See, e.g.*, *State v. Wilson*, No. 13-0712, 2014 WL 4930444, at *5-6 (Iowa Ct. App. Oct. 1, 2014) (affirming denial of motion for new trial where motion was denied "for the reasons as set forth by the State's resistance"); *State v. Fagan*, No. 13-0799, 2014 WL 2600271, at *2 (Iowa Ct. App. June 11, 2014) (same); *In re Marriage of Griffith*, No. 12-0801, 2013 WL 1452930, at *4 (Iowa Ct. App. Apr. 10, 2013) (same); *State v. Fay*, No. 10-0404, 2011 WL 2556034, at *5 (Iowa Ct. App. June 29, 2011) (same). Further, the district court's statement that it denied Towney's motion for the reasons set forth in the State's resistance does not mean the district court did not make an independent evaluation of the evidence, as Towney contends. It simply means the district court agreed with the State's position after conducting its independent evaluation and saw no reason to regurgitate largely the same thing. Towney's claim fails.

Towney further contends it is not clear whether the court applied the required weight-of-the-evidence standard in ruling on the motion. *See State v. Ellis*, 578 N.W.2d 655, 658-59 (Iowa 1998) (setting forth the weight-of-the-evidence standard). We disagree. Towney's motion identified the correct legal standard as did the State's resistance. Under these circumstances, "[w]e find no

reason to believe the district court considered an improper standard in ruling on the defendant's motion for new trial." *Wilson*, 2014 WL 4930444, at *5 (affirming denial of motion for new trial where the parties identified the correct standard and the district court denied the motion for the reasons set forth in the resistance). Towney's reliance on *State v. Root*, 801 N.W.2d 29, 31 (Iowa Ct. App. 2011), is misplaced. The error in the district court's ruling in *Root* was not its brevity, but its ambiguous statement regarding the legal standard applied to the motion. *See Root*, 801 N.W2.d at 31. We remanded for the court to clarify the ambiguity. *See id.* In the present case, the district court denied the motion for the reasons stated in the State's resistance, which cited the correct legal standard.

Finally, Towney challenges the merits of the district court's ruling on his motion for new trial. Review of the district court's ruling on whether a verdict was contrary to the weight of the evidence is for an abuse of discretion. *See State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). Applying the "weight of the evidence standard," the district court weighs the evidence and considers credibility as it determines whether "a greater amount of credible evidence supports one side of an issue . . . than the other." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). Although the district court has wide discretion in deciding a motion for new trial, such discretion must be exercised "carefully and sparingly" to insure the court does not "lessen the role of the jury as the principal trier of the facts." *Ellis*, 578 N.W.2d at 659. The district court should grant a new trial only in the "exceptional case" where "a miscarriage of justice may have resulted." *Reeves*, 670 N.W.2d at 202. Our review is limited to the question of whether the district court abused its discretion in denying the motion and is not a decision on

the merits of whether the verdict is against the weight of the evidence. *See id.* at 203. To establish an abuse of discretion, the defendant must show the district court "exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* at 202.

Towney argues the verdicts were contrary to the weight of the evidence because C.B. was not a credible witness. We disagree. C.B. testified Towney performed most of the sex acts while they were in his bedroom with the door blocked. She also testified her mother argued with Towney about C.B. spending the night in Towney's bedroom. Two of C.B.'s siblings testified and confirmed the arguments and the fact Towney blocked the bedroom door when C.B. slept in the bedroom. A boarder who lived in the home for some months testified he saw Towney and C.B. lying together under a blanket in a "spooning" position, although he could not see what they were doing. This testimony is consistent with C.B.'s testimony that the boarder walked in while she was being sexually abused. The boarder's testimony that Towney and C.B. went on walks alone at night and that the younger children were not allowed to go is consistent with C.B.'s testimony Towney sexually abused her on two occasions in the field behind the house. Further, there is no indication that C.B.'s accusations were retaliatory in nature. C.B. only revealed the sex abuse after Towney had left her mother and moved away and she felt safe from his threatening conduct. Defense counsel conceded during closing that there had not been inconsistent testimony, stating the question was whether the jury believed it ever happened. Given the state of the evidence, we cannot conclude the district court abused its discretion in denying Towney's motion for new trial.

V.

We have considered each of the parties' arguments, whether set forth in full herein. For the foregoing reasons, we affirm the defendant's convictions.

**AFFIRMED.**